UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS FORT,

      Plaintiff,                         CIVIL ACTION NO. 09-11128

     v.                                  DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

# REPORT AND RECOMMENDATION
# ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**I. PROCEDURAL HISTORY**

    ***A.***     ***Proceedings in this Court***

On March 25, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 15, 20). Plaintiff has also filed a reply brief (Dkt. 21).

    ***B.***     ***Administrative Proceedings***

Plaintiff filed the instant claims on April 18, 2006, alleging that he became unable to work on January 16, 2006 (Tr. 94). The claim was initially disapproved by the Commissioner on June 27, 2006 (Tr. 65-72). Plaintiff requested a hearing and, on July 17, 2008, Plaintiff appeared with a non-attorney representative before Administrative Law Judge (ALJ) Anthony B. Roshak, who

considered the case *de novo*. In a decision dated November 4, 2008, the ALJ found that Plaintiff was not disabled (Tr. 5-16). Plaintiff requested a review of this decision on November 9, 2008 (Tr. 74-76). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. 76-77), the Appeals Council, on January 23, 2009, denied Plaintiff's request for review (Tr. 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. ALJ Findings

Plaintiff was 43 years old at the time of the most recent administrative hearing (Tr. 13). Plaintiff has past relevant work as a fabricator and a heating/air conditioning installer (Tr. 13). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 16, 2006 (Tr. 10). At step two, the ALJ found that Plaintiff had the following "severe" impairments: depression, alcohol and drug addiction, asthma and chronic back [hip] pain (Tr. 11). At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that, based on all the impairments, including the

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

substance use disorders, Plaintiff had the Residual Functional Capacity (RFC) to perform "sedentary work...except sit/stand option, occasional climbing, kneeling, crouching and crawling, avoid respiratory irritants, simple routine tasks, unable to sustain concentration attention 8-hours a day, 40 hours a week, due to routine use of marijuana...." (Tr. 12). At step four, the ALJ found that Plaintiff could not perform his previous work installing heating/air conditioning nor his work as a fabricator (Tr. 13). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that – if Plaintiff stopped his marijuana use – Plaintiff could perform a significant number of "sedentary" jobs available in the national economy, such as service work, bench work, or cashier work (4,500 jobs in southeast Michigan and 7,000 in the state of Michigan) or work sorting packages (5,500 jobs in southeast Michigan and 8,000 in the state of Michigan) (Tr. 16).

### B. Administrative Record

#### 1. Plaintiff's Testimony and Statements

Plaintiff testified that he stopped working in January 2006, when he was laid off due to pain in his left hip (Tr. 51-52). Plaintiff stated that felt he was unable to work due to low back pain, bipolar disorder/depression, and asthma (Tr. 53). Plaintiff testified that he could sit or stand for one-half hour each, and could walk one half block (Tr. 48). He stated had no difficulty using his hands and could lift and carry ten to twenty pounds (Tr. 48-50). Plaintiff claimed to have difficulty bending, pushing or pulling, kneeling, climbing, crawling, crouching, or squatting (Tr. 49-51). Plaintiff stated he could understand detailed instructions, but had difficulty remembering detailed instructions, maintaining attention, or concentrating (Tr. 49-50).

Plaintiff testified that he cared for his personal needs, but described limited daily activities other than running errands and exercising (Tr. 45-48). Regarding his daily activities, Plaintiff testified that, after waking up around 6:30 a.m., he gets his daughter ready for school and then

exercises and eats breakfast (Tr. 46-47). Plaintiff testified that he next runs a few errands and then returns home for lunch (Tr. 47). Following lunch, Plaintiff picks up his daughter from school and exercises again. *Id.* Plaintiff stated he then eats dinner, watches TV, and goes to bed around 8:30. *Id.* Plaintiff testified that he smokes about half a pack of cigarettes a day, drinks about one can of beer a month, and smokes marijuana occasionally; in particular, Plaintiff testified at the July 17, 2008 hearing that he smoked marijuana approximately once a month and that the last time had been on the Fourth of July (Tr. 47-48).

2. **Medical Evidence**[2]

Plaintiff sought treatment with therapist Tom Haefner on October 17, 2007, for depression, anger, and panic attacks, at which time an Adult Services Comprehensive Assessment form was filled out (Tr. 495-500). Under the "Mental Health Issues: Thought Process/Behaviors affecting full functioning" section of the form, where a number of traits were rated from 0 (not present) to 5 (present), Mr. Haefner marked "4"s for unusually low mood; sadness; anxious mood; restlessness; extreme oversensitivity; impulse control; angry mood; outbursts; judgment; reality orientation; attention/poor concentration; and cognitive abilities (Tr.499). Mr. Haefner opined that Plaintiff presented symptoms of depression, anxiety, sleep difficulties, angry outbursts, and increased isolation (Tr. 500). Plaintiff reported daily marijuana use to Mr. Haefner (Tr. 500). Mr. Haefner diagnosed Plaintiff with depression and a secondary diagnosis of cannabis abuse and reported that "due to the severity of symptoms the consumer is at risk for psychiatric hospitalization and needs

---

[2] As discussed in detail below, Plaintiff only challenges the ALJ's assessment of his mental limitations on appeal. Therefore, the medical records concerning Plaintiff's physical limitations are not summarized here.

-4-

the Adult Outpatient Program level of care" (Tr. 500). Mr. Haefner listed Plaintiff's current GAF[3] score to be 50.

On October 23, 2007, Plaintiff returned to Mr. Haefner, and reported ongoing feelings of depression, anxiety, anger, and low self esteem (Tr. 491). On the same date, Plaintiff underwent a psychiatric evaluation performed by Dr. G. Sadasivan (Tr. 492-94). In this evaluation, Plaintiff reported he felt angry, frustrated, and had mood swings with violent thoughts (Tr. 492). At this time, Plaintiff reported cannabis use 1-2 times a week (Tr. 493). Dr. Sadasivan noted that Plaintiff walked with a cane, his motor activity was "retarded," his mood depressed, he had paranoid ideations, and had poor concentration (Tr. 493-94). Dr. Sadasivan noted Plaintiff suffered from depression "for a long time," received inadequate treatment and abused alcohol and marijuana (Tr. 494). Dr. Sadasivan's diagnostic impression was major depression, recurrent, a mood disorder due to head injury, and panic disorder with agoraphobia with a secondary diagnosis of cannabis and alcohol abuse. *Id.* In addition, Dr. Sadasivan opined that Plaintiff's GAF score was 50. *Id.*

During visits with Mr. Haefner on October 30 and November 26 of 2007, Plaintiff reported difficulties with depression, anger, and low self esteem (Tr. 486, 490). Mr. Haefner, completed a Medical Examination Report on January 18, 2008, opining that Plaintiff suffers from severe and recurrent major depression and a panic disorder with agoraphobia (Tr. 481-483).

---

[3] The GAF (Global Assessment of Functioning) score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

Mr. Haefner also opined that Plaintiff was limited in sustaining concentration and social interaction, and that he cannot work in any capacity (Tr. 482-83). Plaintiff returned to the Development Centers on June 6, 2008, reporting irritation, lack of patience, difficulty sleeping, and irregular appetite (Tr. 467).

An office note dated May 14, 2008 from the University Pain Clinic noted Plaintiff's symptoms included anxiety, depression, stomach problems, dizziness, shortness of breath, chest pain, and loss of appetite (Tr. 522). A University Pain Clinic office note dated June 11, 2008 listed Plaintiff's symptoms as anxiety, depression, shortness of breath, and noted he lost 30 pounds in a month (Tr. 520).

### 3. Vocational Expert

Lawrence Zatkin testified as a vocational expert ("VE") at the hearing (Tr. 57-61). Mr. Zatkin indicated that Plaintiff's work was primarily as a fabricator in the heating and cooling industry, which is "heavy" to "very heavy" and skilled work. (R. 58). Plaintiff also had a short work experience at a security job, which the VE testified would have been considered "light," unskilled work. *Id.*

The hypothetical question posed to the VE assumed a person with Plaintiff's age, education, the exertion limitations Plaintiff testified to, and a limited ability to sit, stand, walk, lift, carry, push, or pull. *Id.* The VE testified that given Plaintiff's testimony regarding his physical limitations he could not perform any of his past work, but Plaintiff's testimony suggested there was a period of time Plaintiff thought he could perform his work (Tr. 58-59).

When asked if there is any other work he could do, the VE responded that Plaintiff could do jobs classified predominately as "sedentary," including cashier, information clerk, surveillance monitor, and some bench jobs (Tr. 60).

## C. *Plaintiff's Claims of Error*

Plaintiff raises five arguments on appeal: 1) that the ALJ ignored evidence of Plaintiff's mental limitations and erroneously found Plaintiff does not meet listing 12.04; 2) that the ALJ failed to fully develop the record; 3) that the ALJ failed to properly weigh the evidence of record; 4) that the ALJ failed to properly weigh Plaintiff's credibility; and 5) that the ALJ made an erroneous step 5 determination.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence,

or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

>Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
>Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

When Plaintiff applied for Social Security disability benefits in April 2006, he claimed to have become disabled in January of that year as the result of hip pain, high blood pressure, gastrointestinal difficulties, and asthma (Tr. 100). The majority of the medical evidence of record concerns treatment Plaintiff has received for his physical impairments. On appeal, however, Plaintiff does not contest the ALJ's assessment of his ability to perform physical and exertional requirements of work. *See* Plaintiff's Brief. Instead, Plaintiff contends, on appeal, that the ALJ erred in assessing his mental condition. *See* Plaintiff's Brief at 10-18.

A review of the record indicates that Plaintiff saw a counselor, Mr. Haefner, approximately 14 times during an eight-month period from October 2007 through May 2008 (Tr. 473-86, 488-91, 495-500). During this period, psychiatrist Dr. Sadasivan examined Plaintiff once, in November 2007 (Tr. 492-94). These sparse treatment records simply do not establish that – as of Plaintiff's alleged onset of disability, in January 2006 – Plaintiff experienced mental impairments that significantly interfered with his ability to work. As such, the ALJ reasonably concluded that these records did not establish that Plaintiff's ability to perform the mental and emotional requirements of simple, routine work was impaired for a continuous twelve-month period (Tr. 13). *See* 20 C.F.R. §§ 404.1509, 416.909.

Plaintiff argues that the ALJ ignored evidence of his mental limitations and erred by finding that he did not meet Listing 12.04. *See* Plaintiff's Brief at 10-12. Plaintiff contends the ALJ erred by not finding that he experienced marked limitations in social functioning and maintaining concentration, persistence, or pace. *Id.* Defendant responds that the ALJ expressly considered Plaintiff's condition under Section 12.04 and other sections of the Listing of Impairments (Tr. 11-12). Defendant further points out that, in arguing that he experienced "marked" limitations of social functioning and concentration, persistence or pace, Plaintiff relies heavily upon Dr. Sadasivan's report of his sole contact with Plaintiff. *See* Plaintiff's Brief at 11 (citing Tr. 492-94). Defendant's argument is well-taken. Dr. Sadasivan does not appear to be a long-term treating physician, who was familiar with Plaintiff over an extended period of time. Rather, Dr. Sadasivan's opinion appears to have been based primarily upon Plaintiff's subjective allegations during a single appointment. Furthermore, prior to October 2007, the doctors who regularly treated Plaintiff's physical complaints did not report any ongoing emotional difficulties.

Plaintiff also cites to records from Mr. Haefner, in which he described deficits of social interaction and concentration. *See* Plaintiff's Brief at 11 (citing Tr. 467, 482-483, 499-500). Defendant responds that these records do not show that the ALJ erred in assessing the severity of Plaintiff's mental impairment. Defendant is correct. In June 2008, Plaintiff had recently undergone gastrointestinal surgery; Mr. Haefner's progress note describes him as irritated and impatient, but does not appear to describe limited concentration (Tr. 467). For the most part, Mr. Haefner's records simply describe Plaintiff as "working on coping skills for dealing with depression" (Tr. 473-76, 478-80). In fact, in January 2008, Plaintiff twice reported an improvement in his mood and anger management skills which he attributed to his medications (Tr. 480, 484).

Plaintiff further cites to Mr. Haefner's initial examination, and a form Mr. Haefner completed in January 2008. *See* Plaintiff's Brief at 11 (citing Tr. 482-83, 499-500). As an initial mater, Defendant correctly notes that Mr. Haefner is not a licensed psychiatrist or psychologist whose opinion merits special weight and, furthermore, Defendant correctly notes that Mr. Haefner's intake assessment was based entirely upon his initial interview with Plaintiff, rather than upon an ongoing treating relationship (Tr. 495-500). Although Mr. Haefner filled out forms on January 18, 2008, expressing his opinion that Plaintiff was unable to work, during his sessions immediately before and after he completed this form Plaintiff had reported improvement in response to medication (Tr. 480-84). In any event, Mr. Haefner's records over an eight-month period simply do not establish significant limitations lasting for twelve continuous months.

Plaintiff also avers that the ALJ erred by not adequately developing the record. *See* Plaintiff's Brief at 12-13. Plaintiff argues that the ALJ ought to have obtained either a consultative examination or testimony from a medical expert to determine the impact of his mental impairments on his ability to work. *Id.* However, it is Plaintiff who bears the burden of proving that he is disabled. While the ALJ could have sought input from an independent medical advisor, it is clear that the ALJ was under no obligation to purchase a consultative examination in order to assist Plaintiff in establishing disability. *See* 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii); *Foster v. Halter*, 279 F.3d 348, 355-356 (6th Cir. 2002); *Moon v. Sullivan*, 932 F.2d. 1175, 1183 (6th Cir. 1990).

Plaintiff next contends the ALJ erred in noting his daily cannabis use, because Plaintiff had testified during the hearing that he used cannabis only once a month and had told his doctor that he smoked cannabis only one or two times a week. *See* Plaintiff's Brief at 13. Plaintiff contends the ALJ erred in his weighing of the evidence, and accuses the ALJ of "nitpicking" and playing doctor

with respect to the negative impact of Plaintiff's marijuana use on Plaintiff's ability to work.[4] *See* Plaintiff's Brief at 13-15. Defendant responds that it was reasonable for the ALJ to note inconsistencies in Plaintiff's testimony concerning his marijuana use (*e.g.* Plaintiff's testimony that he smoked marijuana infrequently, as contrasted to Plaintiff's statements to Mr. Haefner that he smoked marijuana daily) (Tr. 12, 497, 500). Defendant's argument is well-taken. It was entirely appropriate for the ALJ to consider this inconsistency when evaluating Plaintiff's claims and credibility. Furthermore, there was nothing improper in the ALJ's questioning of Plaintiff regarding smoking marijuana, because SSI benefits cannot be awarded where drug or alcohol abuse is material to a finding of disability. *See* 20 C.F.R. § 416.935.

Relatedly, Plaintiff also contends the ALJ erred in finding him not fully credible. *See* Plaintiff's Brief at 15-18. In particular, Plaintiff avers that the ALJ simply stated that he was "not credible" without providing a sufficiently thorough explanation for that conclusion. *Id.* It is recognized that an ALJ's credibility assessment "must be accorded great weight and deference." *See Workman v. Comm'r of Soc. Sec.*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004); *see also, Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence and, so long as the ALJ's determination is supported by substantial evidence, it must stand. Where an ALJ finds a plaintiff's allegations to not be fully credible, such a finding should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services,* 820 F.2d 777, 780 (6th Cir.1987). In this case, the ALJ found

---

[4] The ALJ found Plaintiff experienced marked difficulties with respect to concentration, persistence or pace as the result of his regular marijuana use (Tr. 11-12). The ALJ ultimately found that – if Plaintiff stopped using marijuana – Plaintiff would be able to perform simple, routine sedentary-level work which allowed him to alternate between sitting and standing at will, did not expose him to concentrated respiratory irritants, and required no more than occasional climbing, kneeling, crouching, and crawling (Tr. 15).

Plaintiff's subjective allegations of incapacitating symptoms and limitations not fully credible (Tr. 12-13). In reaching this conclusion, the ALJ expressly considered appropriate factors including the objective medical evidence, medical opinions of record, Plaintiff's conservative treatment, his treatment and medications, Plaintiff's activities, and inconsistencies in Plaintiff's statements over time. The undersigned finds that the ALJ's weighing of these factors was not unreasonable and, as such, the ALJ's credibility findings should not be disturbed.

In his final argument, Plaintiff contends the ALJ erred in finding he could perform a significant number of jobs because the ALJ failed to resolve an apparent conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). *See* Plaintiff's Brief at 18-20. Plaintiff contends a conflict existed because the VE testified as to jobs permitting a sit/stand option, a matter on which the DOT is silent. *Id.* at 19. Defendant responds that the VE's testimony merely supplemented information in the DOT, it did not conflict with the DOT. Defendant's argument is well-taken. Contrary to Plaintiff's assertion, the VE was not testifying as to any vocational "accommodation"; instead, he was testifying as to the manner in which the jobs he identified were performed.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: July 28, 2010

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 28, 2010, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*